UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

DAMON WILLIAMS,

Plaintiff,

v.

J. CHAU, et al.,

Defendants.

Case No.: 3:17-cv-00517-CAB-KSC

**ORDER ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION**
**[Doc. Nos. 15, 17]**

This matter comes before the Court on Defendants' Motion to Dismiss [Doc. No. 15] and Plaintiff's Motion for Preliminary Injunction [Doc. No. 17]. Plaintiff filed an Opposition to Motion to Dismiss [Doc. No. 22] and Defendant Opposed the Motion for Preliminary Injunction [Doc. No. 23]. As explained in more detail below Defendants' motion is granted and Plaintiff's request for an injunction is denied.

## I. Procedural Background

Plaintiff Damon Williams, a California prisoner proceeding *pro se*, filed a complaint against several Defendants for violation of his civil rights under 42 U.S.C. § 1983. [Doc. No. 1.] Plaintiff alleges claims for: (1) an Eight Amendment violation for deliberate indifference to his health and safety [*Id.* at 35-45]; (2) medical negligence and malpractice [*Id.* at 46-48]; inadequate medical care [*Id.* at 48-50]; and (4) violation of Article I of California's Constitution [*Id.* at 50-51].

On October 2, 2017, Defendants filed a motion to dismiss the Complaint. [Doc. No. 15.] On November 6, 2017, Plaintiff filed his Response in Opposition to the Motion to Dismiss. [Doc. No. 22.]

Following the filing of the Motion to Dismiss. Plaintiff filed a Motion for Preliminary Injunction. [Doc. No. 17.] On November 17, 2017, Defendants filed their Opposition to the Motion. [Doc. No. 23.]

## II. Factual Background

On August 3, 2015, Plaintiff fainted and fell from the top bunk of his cell. The fall resulted in him fracturing the big toe on his right foot. [Doc. No. 1 at ¶ 69; Doc. No. 1-3 at 76-79; Doc. No. 1-4 at 81-84; Doc. No. 1-6 at 14.] Plaintiff alleges that on multiple occasions both prior to and following his fall he requested a lower bunk chrono[1] assignment because of a preexisting heart condition, dizziness and feeling faint, but that his requests were repeatedly denied. [Doc. No. 1.]

On October 2, 2015, Plaintiff visited Dr. Chau to discuss the injury he sustained to his right toe when he fell from the top bunk. [Doc. No. 1-3 at 10-11.] The Medical Progress Note indicates Plaintiff's history of hypertension but that he denied any chest pain, shortness of breath, headaches or blurry vision. [*Id.* at 10.] The Note records Plaintiff's recent diagnosis of a fracture dislocation of the big toe, his orthopedic surgeon's recommendation and his upcoming surgery to repair the injury. [*Id.*] Subsequently, Plaintiff underwent surgery to fix his big right toe.

Following his surgery, Plaintiff was seen by Dr. Chau on multiple occasions in October and November of 2015. [Doc. No. 1-3 at 12-17, 20.] At those appointments Plaintiff complained of some throbbing pain in his right big toe and occasional dizziness but denied any chest pain or shortness of breath. [*Id.*] On November 13, 2015, Plaintiff submitted a Health Care Request Form regarding the lower bunk chrono that was about to

---

[1] A "permanent lower bunk chrono" is a medical order that mandates a prisoner be assigned a lower bunk in his cell.

expire on November 16, 2015. [Doc. No. 1-5 at 13.] At his November 20, 2015, appointment Plaintiff told Dr. Chau that he would like to see a cardiologist. [Doc. No. 1-3 at 18-19.] Plaintiff's treatment plan required he be sent for echocardiograms, after which referral to a cardiologists would be considered. [*Id.* at 20.]

On January 10, 2016, Plaintiff filed a 602 medical appeal requesting: (1) a referral to a heart specialist because Dr. Chau's care was inadequate; (2) he be given the opportunity to have another surgeon evaluate his right foot after his "botched" surgery; and (3) the suspension, termination and replacement of Dr. Chau. [Doc. No. 1 at ¶ 12; Doc. No. 1-2 at 2-3.] Although alleged in the complaint, the issue regarding lower bunk assignment was not raised nor identified as an issue in Plaintiff's initial 602 appeal filing. [*See* Doc. No. 1-2 at 2-4.] On the same day, Plaintiff submitted a Reasonable Modification or Accommodation Request for a "permanent medical chrono for a lower tier, lower bunk." [*Id.* at 13.] Plaintiff also asked for a mobility impaired vest, referral to a heart specialist and for a "specialist surgeon to examine [his] foot surgery." [*Id.*]

On January 12, 2016, after filing his 602 Appeal, Plaintiff visited Dr. Chau to discuss being medically unassigned. [Doc. No. 1-3 at 22-23.] The Medical Progress Note includes an entry that Plaintiff had a pending appointment for an echocardiogram because of his dizziness. [*Id.* at 22.] In February 2016, Plaintiff made three additional visits to Dr. Chau where he continued to complain of occasional discomfort of his right toe but did not consistently report experiencing dizziness, lightheadedness, chest pain or shortness of breath. [*Id.* at 41-42.] On February 12, 2016, Plaintiff attended the clinic regarding his 602 appeal, where he complained of "occasional shortness of breath, chest discomfort, dizziness and lightheadedness at rest and with activity." [*Id.* at 43-44.] Subsequently, Plaintiff submitted a Health Care Request Form stating he needed to come in and talk to the doctor about his housing restrictions chrono. [Doc. No. 1-5 at 23.]

On February 17, 2016, Dr. Casian interviewed Plaintiff regarding his 602 Appeal and discussed Dr. Chau's denial of his request for a lower bunk chrono. [Doc. No. 1 at ¶ 13; Doc. No. 1-2 at 4; Doc. No. 1-3 at 39-40, 45-46.] On February 24, 2016, Dr. Guldseth,

acting on Defendant Walker's behalf, signed and granted in part Plaintiff's first level appeal. [Doc. No. 1 at ¶ 14, Doc. No. 1-2 at 4-5.] Plaintiff's request to be referred to a cardiologist was partially granted[2], whereas the other two identified issues were denied. [Doc. No. 1-2 at 4.]

On March 7, 2016, Plaintiff submitted his 602 Appeal for the next level of review (second level). [Doc. No. 1 at ¶ 15; Doc. No. 1-2 at 6.] On April 12, 2016, Defendants Roberts and Glynn partially granted Plaintiff's appeal at the second level, with Plaintiff being scheduled to meet a cardiologist on April 20, 2016. [Doc. No. 1 at ¶ 16; Doc. No. 1-2 at 6-7.] The second level review institution response included an entry that Plaintiff "added a new issue and/or request to [his] appeal at the Second Level of Review. It is not appropriate to expand the appeal beyond the initial problem and/or request. This issue will not be addressed, as you have not provided evidence that you attempted to address it at the lower level, per the CCR, Title 15, Section 3084.1(b)." [Doc. No. 1-2 at 6.]

On April 25, 2016, Plaintiff resubmitted his 602 Appeal for the third level of review. [Doc. No. 1 at ¶ 17.] On August 1, 2016, Defendant Lewis performed a Director Level review of Plaintiff's appeal and denied Plaintiff's requests for (1) a referral to see an outside heart specialist; (2) a full scale medical investigation against Dr. Chau and Dr. Chau's suspension and/or termination; (3) appointment of a different medical provider; and (4) monetary compensation for Dr. Chau's alleged misconduct. [Doc. No. 1-2 at 8-10.]

On June 27, 2016, Plaintiff submitted a Health Care Request Form requesting an appointment with the doctor to discuss getting his "lower bunk chrono renewed, if possible have the chrono made permanent so I won't keep having to have it renewed. I got the chrono on C yard after I became dizzy, fell while coming down from the top bunk and broke my toe, I still get dizzy sometimes." [Doc. No. 1-5 at 29.]

---

[2] On April 20, 2016, Plaintiff's cardiology consultation occurred. [Doc. No. 1-3 at 49; Doc. No. 1-4 at 57-60.]

On August 8, 2016, Plaintiff met with Dr. Casian to request a permanent lower bunk chrono. [Doc. No. 1-3 at 51-52.] The Medical Progress Note states Plaintiff: "had a temporary 7410 for lower bunk for ongoing cardiac evaluation. He reports that he continues to feel dizzy sometimes and he will most likely fall again if he gets moved to an upper bunk." [*Id.* at 51.] However, Dr. Casian found that upon review of the results of Plaintiff's cardiac monitor she "did not notice any significant abnormalities that would be a concern for a significant cardiac diagnosis as tachy/bradycardia that will require further intervention and a lower bunk [c]hrono." [*Id.*[3]] She also noted that Plaintiff "does not meet medical criteria for a permanent lower bunk [c]hrono. He will only receive a temporary lower bunk [c]hrono until his follow-up with Telemedicine Cardiology to review the most recent cardiac telemetry report and to confirm that the patient was not diagnosed with a severe cardiac condition which is less likely based on my review." [Doc. No. 1-3 at 51.] On August 9, 2016, Dr. Casian issued Plaintiff a lower bunk chrono with a November 8, 2016 expiration date. [Doc. No. 1-4 at 98.]

On October 4, 2016, Plaintiff filed a Government Claim regarding the August 3, 2015 incident. [Doc. No. 1-2 at 26-29.] Plaintiff submitted the claim for the injury he sustained to his foot following the fall, asserting that on many different occasions he informed Dr. Chau of the chest pain and dizziness he frequently experienced while going up and down from the upper bunk. [*Id.* at 27.] According to Plaintiff, he "requested to have a lower bunk chrono issued many of [sic] times to reduce the dizziness only to be denied by Dr. J. Chau. Dr. J. Chau disregarded his request for a lower bunk chrono." [*Id.* at 27-28.] On January 25, 2017, the Government Claims Program informed Plaintiff that

---

[3] *See also* Doc. No. 1-4 at 70-71:"monitor evaluation showed no abnormal heart rhythms." Following the heart monitor evaluation Plaintiff was administered a treadmill stress test that showed no "abnormalities consistent with myocardial ischemia, however the patient complaint [sic] of very mild chest discomfort which does not appear to be significant, test is interpreted as being negative for myocardial ischemia." [*Id.* at 72-74.]

it had no jurisdiction to consider his claim because it was filed more than one year from the date of the incident forming the basis of the claim. [*Id.* at 31.]

In October and November 2016, Plaintiff made multiple requests for renewal of his lower bunk chrono. A Medical Progress Note from October 11, 2016, indicates the chrono would be renewed "until Cardiology [sic] final recommendations." [Doc. No. 1-6 at 58-59.] Subsequently, Plaintiff submitted two Health Care Request Forms following up with Dr. Saha regarding his renewal request. [Doc. No. 1-5 at 40, 43.] A December 1, 2016, Medical Progress Note by Dr. Saha includes the notation that: "Chrono 1845 and 7410 were updated for temporary chrono for pending cardiac evaluation." [Doc. No. 1-6 at 62-63.]

On March 10, 2017, Plaintiff filed a Complaint against Defendants. [Doc. No. 1.] Plaintiff contends that Director Lewis and Drs. Roberts, Glynn and Walker denied his appeals and, with deliberate indifference to his medical needs, placed him in a situation where he faced a substantial risk of serious harm. [Doc. No. 1 at 11-12, ¶¶ 29, 96, 97, 111-114.] Further, Plaintiff claims Defendants refused to give him a permanent lower bunk chrono despite: (1) knowing that he was in danger; and (2) even though they were aware of Dr. Chau's deliberate indifference to his serious medical conditions. [Doc. No. 1 at 11-12; ¶¶ 29, 96, 97, 111-114, 120, 139, 147.] Plaintiff seeks monetary damages and injunctive relief. He asks the Court to issue an order compelling Defendants to perform their preexisting duties set forth under the Eight Amendment, and order Defendants provide him with a permanent lower bunk chrono.

### III. Motion to Dismiss

### A. Legal Standard.

Under Rule 12(b)(6), a party may bring a motion to dismiss based on the failure to state a claim upon which relief may be granted. A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For purposes of ruling on a Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint

as true and construe[s] the pleadings in the light most favorable to the non-moving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

Even under the liberal pleading standard of Rule 8(a)(2), which requires only that a party make "a short and plain statement of the claim showing that the pleader is entitled to relief," a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]onclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively,"). "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

**B. Discussion**

Defendants seek dismissal of the claims against Defendants Glynn, Lewis, Roberts and Walker (collectively "Supervisory Defendants") on the grounds that Plaintiff has failed to state an Eight Amendment claim against these supervisors. [Doc. No. 15-1 at 3-8.] Further, Defendants contend that dismissal of the Eight Amendment claim against all Defendants is warranted because the Complaint fails to state a claim relating to the period following Plaintiff's fall on August 3, 2015. [*Id.* at 8-10.]

**1. Pre-Fall Bunk Assignment**

First, Plaintiff asserts Eight Amendment violation claims against Defendants for the actions and omissions that predate his fall from the top bunk on August 3, 2015. Defendants seek dismissal of this portion of the claim against the Supervisory Defendants for failure to state a claim but concede that Plaintiff "arguably states a claim against

Defendant Chau for denying him a lower-bunk chrono before the fall on August 3, 2015."
[Doc. No. 15-1 at 2:3-4; 3-8.]

"[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eight Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (*quoting Helling v.* McKinney, 509 U.S. 25, 31 (1993)). Generally, a prison official's review of an inmate's administrative appeal cannot serve as the basis of liability under § 1983. *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing appeals because no entitlement to a specific grievance procedure) (*citing Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988)). However, prison administrators cannot willfully ignore constitutional violations being committed by subordinates. *Starr,* 652 F.3d at 1207. To establish a supervisor's liability a plaintiff must make a showing of the supervisor's personal involvement in the constitutional deprivation or demonstrate a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. *Henry A. v. Willden*, 678 F.3d 991, 1003-04 (9th Cir. 2012). But, vague and conclusory allegations concerning the involvement of official personnel are not sufficient. *Ivey v. Bd. Of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). *See also Lemire v. Cal. Dep't of Corrections & Rehabilitation*, 844 F.2d 628, 1074 (9th Cir. 2013) (there is no liability under § 1983 solely based on the actions or omissions of another).

Liberally construing the Complaint, Plaintiff has failed to adequately allege a cognizable Eight Amendment claim against the Supervisory Defendants. Plaintiff alleges Defendant Glynn is a physician responsible for overseeing medication programs, policies and personnel at RJDCF who approved Operational Plan 146 which provides guidance on the issuance of chronos, including lower bunk ones. [Doc. No. 1 at ¶ 6; Doc. No. 1-2 at 89-96.] Further, Plaintiff contends that as a member of the Institutional Utilization Management Committee, Defendant Glynn was personally involved in Plaintiff's care and read and reviewed his medical appeals. [Doc. No. 1 at ¶¶ 6, 16.] Additionally, Plaintiff alleges Defendant Glynn knew about his continued chest pains and requests to see a heart

specialist, had authority to prevent a constitutional violation, and although granted his request to see a cardiologist, denied his request for a permanent lower bunk chrono. However, aside from these conclusory statements there are no factual allegations in the complaint that suggest that Defendant Glynn administered any medical care to Plaintiff, or was involved in any decisions regarding Plaintiff's lower bunk chrono prior to his fall.

As to Defendant Lewis, Plaintiff alleges that he is the individual responsible for the final, Level 3, inmate medical appeal decision who is in a position to correct the prison medical care decision if he determines the prison was wrong. [*Id.* at ¶ 5.] Plaintiff claims Defendant Lewis "failed to act to prevent the ongoing unconstitutional policy to not issue a lower bunk to prevent falling off the top bunk permanently…" [*Id.*] On August 1, 2016, Defendant Lewis performed a Director Level review of Plaintiff's appeal and denied Plaintiff's requests. [Doc. No. 1-2 at 8-10.] However, setting aside his role in Plaintiff's 602 Appeal, absent from the complaint are any allegations that Defendant Lewis was in any way involved in Plaintiff's medical treatment, or was involved in any decisions regarding Plaintiff's lower bunk chrono prior to his fall. Thus, the allegations regarding role simply relate to Plaintiff's administrative appeal, and as such, cannot be the basis for liability under § 1983. *See Shehee*, 199 F.3d at 300.

As to Defendant Roberts, Plaintiff alleges that Defendant Roberts is a physician responsible for overseeing medication programs, policies and personnel at RJDCF. [Doc. No. 1. at ¶ 6.] Plaintiff alleges that as a member of the Institutional Utilization Management Committee, Defendant Roberts was personally involved in Plaintiff's care and read and reviewed his medical appeals. [*Id.* at ¶¶ 6, 105, 107.] He also claims that Defendant Roberts was in a position to correct the wrong doing but failed to do so. [*Id.* at ¶ 6.] Additionally, Plaintiff alleges that on September 22, 2015, October 1, 2015, November 2, 2015, and January 22, 2016, Dr. Roberts signed for copies of medical report along with copies of the x-ray or CD. [*Id.* at ¶ 24-27.] However, these allegations do not suggest that Defendant Roberts administered any medical care to Plaintiff, or was involved in any decisions regarding Plaintiff's lower bunk chrono prior to his fall.

3:17-cv-00517-CAB-KSC

As to Defendant Walker, Plaintiff alleges that Defendant Walker is a physician responsible for overseeing medication programs, policies and personnel at RJDCF. [*Id.* at ¶ 6.] Plaintiff asserts that as a member of the Institutional Utilization Management Committee, Defendant Walker was personally involved in Plaintiff's care and read and reviewed his medical appeals. [*Id.* at ¶¶ 6, 106.] Further, Plaintiff claims that Defendant Walker was in a position to correct the wrong doing but failed to do so. [*Id.*] Additionally, Plaintiff alleges that on multiple occasions, Defendant Walker approved Dr. Chau's requests, including those for physical therapy, an orthopedic consultation and, on September 17, 2015, approved Plaintiff's assignment to a top bunk after he had already fallen. [*Id.* at ¶¶ 29-35.] But, these general allegations do not suffice to establish Defendant Walker's personal involvement in the alleged constitutional deprivation or demonstrate a sufficient causal connection between the supervisor's wrongful conduct and the purported constitutional violation. *See Henry A.,* 678 F.3d at 1003-04.

Moreover, the conclusory allegations of the Complaint do not save Plaintiff's claims against the Supervisory Defendants. Plaintiff summarily alleges that all of the Supervisory Defendants were deliberately indifferent to his medical needs because they ignored his medical history and assigned him an upper bunk. [Doc. No. 1 at ¶¶ 100, 102-104, 110-13, 119.] Plaintiff contends that Defendants' deliberate indifference caused him to suffer a serious fracture to his right foot big toe. [*Id.* at ¶¶ 121-22.] He asserts that Defendant Chau directly denied him a lower –bunk chrono several times before the fall and that Defendants Glynn, Lewis, Roberts and Walker are liable as supervisors. [*Id.* at ¶ 93.] Further, Plaintiff complains that Defendants Glynn, Lewis, Roberts and Walker failed to properly monitor and supervise Defendant Chau, denied his request to see a cardiologist and, because of the denial he was forced to file a 602 Appeal. [*Id.* at ¶¶ 93, 118, 121-22.] Plaintiff also alleges that from January 26, 2015 through April 22, 2016 he informed Defendants prior to his fall about his heart pain, dizziness and feeling faint while on the top bunk. [*Id.* at ¶ 73.] Additionally, Plaintiff alleges that Defendants were knowledgeable "of Plaintiff's health/safety problems from numerous prior contact with Plaintiff," and that between 2015

through 2017, "Defendants made an intentional decision to leave Plaintiff on the top bunk." [*Id.* at ¶¶ 90, 95.] But, there are no allegations that the Supervisory Defendants were aware of the purported violations prior to Plaintiff filing his 602 Appeal on January 10, 2016, four months after Plaintiff's fall from the top bunk. Furthermore, nothing in the Complaint connects the Supervisory Defendants to the decisions of Defendant Chau prior to Plaintiff's fall. The absence of factual allegations in the complaint linking a specific Supervisory Defendant to the purported pre-fall constitutional violation means that Plaintiff has failed to allege with the requisite degree of particularity the acts which the Supervisory Defendants engaged in sufficient to state a claim.

In accordance with the above, Defendants' motion to dismiss the claims against Supervisory Defendants Glynn, Lewis, Roberts and Walker is **GRANTED** and Plaintiff's Eight Amendment Claim for the period predating his fall is **DISMISSED WITHOUT PREJUDICE.** Plaintiff is cautioned that if he chooses to file an amended complaint in order to state a claim for this time period he must allege, with at least some degree of particularity, the overt acts or omissions that each Defendant engaged in. *See Jones v. Cmty. Redevelopment Agency of City of L.A..,* 733 F.2d 646, 649 (9th Cir. 1984) (in order to state even pro se plaintiffs must "allege with at least some degree of particularity overt acts which defendants engage in, in order to state a claim."); *Leer v. Murphy,* 844 F.2d 628, 633 (9th Cir. 1988) *(citing Rizzo v. Goode,* 423 U.S. 362, 370-71 (1976)) (as a required element of a § 1983 claim "the inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").

### 2. Post-Fall Bunk Assignment

Second, Plaintiff alleges that following his fall from the top bunk all of the Defendants were deliberately indifferent to his medical needs and safety because they refused to issue him a permanent lower bunk chrono. [Doc. No. 1 at ¶¶ 120, 127.]

The Eight Amendment protects prisoners from "inhumane conditions of confinement." *Morgan v. Morgensen,* 465 F.3d 1041, 1045 (9th Cir. 2006). In furtherance

of this protection, the government must "provide medical care for those whom it is punishing by incarceration," and cannot act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). But, a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. at 837. A prison official acts with deliberate indifference if the official "knows of and disregards an excessive risk to inmate health or safety." *Id*. However, neither an inadvertent failure to provide medical care by prison authorities, nor negligence or malpractice by medical staff, constitutes deliberate indifference. *Estelle*, 429 U.S. at 107. Neither is an official who knows of a substantial 0risk, liable "if [he] responded reasonably." *Farmer*, 511 U.S. at 844. Thus, to prevail a prisoner claiming an Eighth Amendment violation must make (1) an objective showing that he had a serious medical need; and (2) a subjective showing that the specific defendants were deliberately indifferent to the need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

Here, Plaintiff simply makes the conclusory allegation that following his fall Defendants acted with deliberate indifference but provides no facts in support of this assertion. Moreover, his contention that the Defendants were deliberately indifferent to his heart condition and need for a lower bunk assignment is belied by the exhibits he filed in support of his claim. A review of the 590 pages of documents submitted by Plaintiff as exhibits to the complaint demonstrate that, following his injury and fall from the top bunk, he received eight temporary lower bunk accommodation chronos. On September 16, 2015, Plaintiff was granted a temporary bottom bunk accommodation chrono that was set to expire on March 14, 2016. [Doc. No. 1-2 at 21; Doc. No. 1-4 at 100.] On January 12, 2016, Plaintiff was granted a second temporary bottom bunk accommodation chrono that was set to expire on March 14, 2016. [Doc. No. 1-2 at 22; Doc. No. 1-4 at 99.] On the same day Dr. Chau submitted a Comprehensive Accommodation Chrono that granted Plaintiff a temporary lower bunk assignment until July 10, 2016. [Doc. No. 1-4 at 107.]

On February 25, 2016, Dr. Casian issued Plaintiff with a fourth temporary lower bunk assignment with July 10, 2016 as the expiration date. [Doc. No. 1-4 at 108.] On April 29, 2016, Dr. Casian issued a fifth temporary lower bunk assignment to Plaintiff with July 10, 2016 as the expiration date. [Doc. No. 1-4 at 109.] On August 9, 2016, Dr. Casian issued a sixth lower bunk chrono to Plaintiff with November 8, 2016 as the expiration date. [Doc. No. 1-4 at 110.] On October 11, 2016, Plaintiff was granted a seventh lower bunk chrono by Dr. Saha, with a December 26, 2016 expiration date. [Doc. No. 1-4 at 103.] On December 1, 2016, Dr. Saha issued Plaintiff am eighth lower bunk chrono with a March 15, 2017 expiration date. [Doc. No. 1-4 at 105.]

From the record before it, the Court finds that since falling from the top bunk, Plaintiff's multiple requests for a lower bunk chrono have been granted. The fact that the requests were labeled "temporary" does not negate the fact that they were issued. Thus, it cannot be said that Defendants acted with the deliberate indifference necessary for Plaintiff to state a claim. *See Colwell*, 763 F.3d at 1066. Accordingly, Defendants' motion to dismiss all claims related to Plaintiff's lower bunk chrono following his fall on August 3, 2015 is **GRANTED** and Plaintiff's Eight Amendment Claim for the period following his fall is **DISMISSED WITH PREJUDICE.**

## IV. Motion for Preliminary Injunction

Plaintiff filed a Motion for Preliminary Injunction asking the Court to order Defendants to furnish Plaintiff with a "permanent lower bunk chrono." [Doc. No. 17 at 3.] In their Opposition, Defendants assert that the issue regarding the lower bunk chrono is moot because "the prison issued Plaintiff a permanent lower bunk chrono on October 21, 2017." [Doc. No. 23.] Along with their opposition, Defendants furnished the Court with a copy of the DDP Disability/Accommodation issued to Plaintiff that permanently restricts Plaintiff's housing to a lower/bottom bunk only. [Doc. No. 23-1 at 10.] The accommodation has a 12/31/9999 expiration date and does not require any reevaluation. [*Id.*] In light of the fact that Plaintiff has received the relief he was requesting, the motion for preliminary injunction **DENIED** as **MOOT**

**V.    Conclusion**

In accordance with the foregoing: (1) Defendants' motion to dismiss Defendants Glynn, Lewis, Roberts and Walker is **GRANTED** with **LEAVE TO AMEND**; (2) Defendants' motion to dismiss the portions of the Eight Amendment claim that post-date August 3, 2015 is **GRANTED**; and (3) Plaintiff's motion for preliminary injunction is **DENIED** as **MOOT**.  Plaintiff may file an amended complaint **no later than <u>February 26, 2018</u>**.

It is **SO ORDERED**.

Dated:  January 24, 2018

_____
Hon. Cathy Ann Bencivengo
United States District Judge