UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAMON WILLIAMS,<br><br>                      Plaintiff,<br><br>v.<br><br>J. CHAU, et al.,<br><br>                      Defendants. | Case No.: 3:17-cv-00517-CAB-KSC<br><br>**ORDER REGARDING MOTION FOR SUMMARY JUDGMENT [Doc. No. 45]** |

On October 14, 2019 Defendant J. Chau, M.D., filed a motion for summary judgment. [Doc. No. 45.] On January 10, 2020, Plaintiff filed an opposition. [Doc. No. 54.] On February 21, 2020, Defendant filed a reply to the opposition. [Doc. No. 58.] For the reasons set forth below, the motion for summary judgment is **GRANTED**.

INTRODUCTION

Plaintiff alleges that Dr. Chau violated the Eighth Amendment through deliberate indifference to Plaintiff's serious medical need. Specifically, Plaintiff alleges that Dr. Chau refused to issue him a lower bunk chrono in prison despite Plaintiff's medical need. Plaintiff further alleges that he fell off his bunk and fractured his big toe on August 3, 2015, because of this failure.

Defendant argues the undisputed evidence shows there was no deliberate indifference.

# EVIDENCE PRESENTED BY DEFENDANT

Dr. Chau is a medical doctor employed by the California Department of Corrections and Rehabilitation (CDCR) at the Richard J. Donovan Correctional Facility (Donovan prison). (Chau Decl. ¶ 2.) While serving as Plaintiff's primary care doctor, Dr. Chau provided near-constant medical treatment and exams to Plaintiff from December 2014 to December 2015. (Compl. Ex. H, N, P & Q.) Dr. Chau personally examined and treated Plaintiff twelve times during this period. (*Id.*) Dr. Chau also prescribed medications; issued medical devices; ordered blood tests, x-rays, and EKGs; referred Plaintiff to Alvarado Hospital; and assigned nurses for follow-up visits. (*Id.*) Several other doctors and nurses also examined and treated Plaintiff at Donovan prison during this period. (Compl. Ex. T & U.)

Plaintiff alleges that he fell of his upper bunk and fractured his toe on August 3, 2015. But Plaintiff did not immediately report the incident or seek medical treatment for the injury. (Compl. Ex. S.) Plaintiff delayed seeking medical care until September 15, 2015, because he thought he had only sprained the toe. (*Ibid.*) Nevertheless, he received constant and appropriate medical care once he reported the injury. (Compl. Ex. H, N, P, Q, T, U.)

Dr. Chau was not aware of any incidents where Plaintiff fell from his bunk prior to August 3, 2015. (Chau Decl. ¶ 5.) Dr. Chau was not aware of Plaintiff sustaining any injuries or medical treatment for issues related to falls prior to August 3, 2015. (*Id.*) Dr. Chau never witnessed any episodes of dizziness or fainting during his treatment of Plaintiff. (Chau Decl. ¶ 6.) Plaintiff did not mention dizziness or fainting in most of his medical requests for treatment or during his medical exams prior to August 3, 2015. (Chau Decl. ¶ 7.) For example, Plaintiff submitted several CDC 7362 Healthcare Services Request Forms during the period prior to August 3, 2015. (*Id.*) But Plaintiff did not mention dizziness or fainting in his medical requests. (*Id.*)

A brief mention of dizziness did occur during an examination Dr. Chau conducted of Plaintiff on February 23, 2015. (Chau Decl. ¶ 8.) Although Plaintiff did not mention

dizziness when he requested medical treatment for that day, he did mention it in response to a question about his general symptoms. (*Id*.) Plaintiff answered that he had experienced dizziness when scrubbing his cell floor. Dr. Chau followed up with Plaintiff on April 9, 2015. (Chau Decl. ¶ 9.) Plaintiff had occasional chest pain, but no further dizziness. (*Id*.) Based on Dr. Chau's examination and evaluation at that visit, Plaintiff was diagnosed with atypical localized chest pain, which examination showed was consistent with musculoskeletal origin. (*Id*.) Therefore, a cardiologist referral was not necessary. (*Id*.) Later, when Plaintiff had further complaints, Dr. Chau referred Plaintiff to a cardiologist in December 2015 for an echocardiogram workup. (*Id*.)

Plaintiff issued several requests for medical treatment in the period leading up to the fall. But these requests did not mention dizziness, falling, or other related issues. (Compl. Ex. S.) Plaintiff complained about such things as knee pain, dry skin, allergy medication, x-rays results, a missed appointment and heart pain. (*Id*.) Medical staff evaluated Plaintiff for each of these requests. (Compl. Ex. H, N, P, Q, S, T, U.)

Dr. Chau's professional medical opinion – based on his experience and training, as well as medical examinations, evaluations, diagnostic tests, and laboratory results for Plaintiff – did not show that a lower bunk/lower tier chrono was medically necessary at that time. (Chau Decl. ¶ 10.) Although Plaintiff suffered from hypertension and shoulder pain, Plaintiff did not have a medical condition that presented a substantial risk of falling, Plaintiff had no history of falling, and Plaintiff had only mentioned a minor episode of dizziness while doing a chore. (*Id*.) Several other doctors and medical professionals also provided medical evaluations and treatment to Plaintiff at Donovan prison prior to August 3, 2015. (Chau Decl. ¶ 11.) They also formed professional medical opinions that a lower bunk/lower tier chrono was not medically necessary for Plaintiff at that time. (*Id*.)

/ / / / /
/ / / / /
/ / / / /
/ / / / /

## DISCUSSION

A. Legal Standard.

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1863 (2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Bald assertions that genuine issues of material fact exist are insufficient. *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).

The moving party bears the burden of identifying those portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 323. Once the moving party meets its initial burden, the nonmoving party must go beyond the pleadings, and, by its own affidavits or discovery, set forth specific facts showing that a genuine issue of fact exists for trial. Fed. R. Civ. P. 56(c); *Barthelemy v. Air Lines Pilots Ass'n*, 897 F.2d 999, 1004 (9th Cir. 1990) (*citing Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983)). All justifiable inferences, however, must be drawn in the light most favorable to the nonmoving party. *Tolan,* 134 S. Ct. at 1863 (*citing Liberty Lobby*, 477 U.S. at 255).

At summary judgment, the Court may find that officials are shielded from liability under the doctrine of qualified immunity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Mullenix v. Luna*, 136 S. Ct. 305, 208 (2015) (*per curiam*).

B. Analysis.

The Eighth Amendment protects prisoners from "inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Consequently, the government must "provide medical care for those whom it is punishing

4

by incarceration," and cannot act with deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A prison official acts with deliberate indifference if the official "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference is also known as the "unnecessary and wanton infliction of pain." Estelle, 429 U.S. at 104 (internal quotations omitted). To prevail, a plaintiff must make (1) an objective showing that he had a serious medical need; and (2) a subjective showing that the specific defendants were deliberately indifferent to that need. *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014).

Here, the records show that Defendant was attentive to Plaintiff's medical needs. During the relative time period (December 2014 to December 2015), Plaintiff had medical exams and visits with Dr. Chau on twelve different occasions. (Compl. Ex. H, N, P & Q.) Dr. Chau also prescribed medications; issued medical devices; ordered blood tests, x-rays, and EKG's; referred Plaintiff to Alvarado Hospital; and assigned nurses for follow-up visits. *Id.* In addition, several other doctors and nurses also participated in Plaintiff's treatment on separate occasions. *Id.*

Dr. Chau was not aware of any incidents where Plaintiff fell from his bunk prior to August 3, 2015. (Chau Decl. ¶5.) Dr. Chau never witnessed any episodes of dizziness or fainting during his treatment of Plaintiff. (Chau Decl. ¶6.) In addition, Plaintiff did not mention dizziness or fainting in most of his medical requests for treatment or during his medical exams prior to August 3, 2015. *Id.*

It was Dr. Chau's professional medical opinion that, prior to August 3, 2015, a lower bunk/lower tier chrono was not medically necessary for Plaintiff. (Chau Decl. ¶10.) Several other doctors and medical professionals also formed professional medical opinions that a lower bunk/lower tier chrono was not medically necessary for Plaintiff at that time. (Chau Decl. ¶11.)

In his opposition, Plaintiff essentially disagrees with the decision not to issue a lower bunk chrono. However, a mere difference of opinion between a patient-inmate and

a physician about the appropriate treatment is insufficient to give rise to an Eighth Amendment claim. *Toguchi v. Chung*, 391 F.3d 1051, 1058 (9th Cir. 2004), *citing Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). Even a showing of medical malpractice or gross negligence is insufficient to establish a constitutional violation. *Toguchi*, 391 F.3d at 1060. Rather, the plaintiff must show that the chosen course of treatment " 'was medically unacceptable under the circumstances' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.' " *Id., quoting Jackson*, 90 F.3d at 332.

Here, Plaintiff fails to present any evidence of a medical necessity for the lower bunk chrono prior to August 2015, much less any evidence that Dr. Chau was deliberately indifferent by consciously disregarding a risk of harm. Instead, Plaintiff, an unqualified lay witness, bases his opposition on his personal opinions and interpretations of the medical records and evidence. However, Plaintiff's opinions are improper and insufficient to defeat summary judgment.

Moreover, some of Plaintiff's opinions are contradicted by the very evidence he cites. For example, Plaintiff argues that his inmate appeal was granted by Donovan prison in 2016 "because they found Dr. Chau's course of treatment was medically unacceptable." [Doc. No. 54 at 19.] But the referenced exhibit does not support that claim. (Compl. Ex. A at 2-10.) The appeal was partially granted in that Plaintiff was referred to a cardiologist. *Id.* But the appeal was denied in all other aspects, including Plaintiff's claims against Dr. Chau. *Id.*

Plaintiff also contends that Dr. Chau falsified the EKG reports. [Doc. No. 54 at 2, 15, 21.] He alleges that Dr. Chau fraudulently noted that the December 2014 EKG report was "normal" even though it showed abnormality. [*Id.* at 21, 27-29.] But Plaintiff's contention appears to be based on his unqualified lay interpretations of the EKG reports and Dr. Chau's records. In fact, on February 4, 2015, Dr. Chau specifically noted abnormalities in the December 2014 EKG "compatible with hypertensive changes, otherwise nothing acute." (Compl. Ex. J at 4-5.) Still, Dr. Chau ordered a new EKG. On

6

February 23, 2015, Dr. Chau reviewed the EKG and noted his impression as "normal sinus rhythm, within normal limits, unchanged from last EKG." (Compl. Ex. J. at 6-7.) Dr. Chau specifically noted previous abnormalities re hypertension from the old EKG, and then interpreted the sinus rhythm from the new EKG as within normal limits - which is unchanged. (*Id.*) Thus, Plaintiff's "evidence" of fraud or misrepresentation is based entirely on his unqualified and unsupported characterizations of the EKG and the medical notes regarding them.

Plaintiff's opposition also appears to be based on his conflation of his chest pain complaints and with dizziness and fainting. Dr. Chau presented evidence that Plaintiff only made mentions of dizziness and fainting in February 2015, but did not mention it in most medical records and visits. Plaintiff attempts to contradict this evidence by arguing that Dr. Chau ignored numerous complaints of dizziness and fainting from Plaintiff. But it appears that Plaintiff believes his complaints about chest pain should be interpreted and included as complaints of dizziness. For instance, Plaintiff claims that Dr. Chau knew about dizziness issues because Plaintiff had a "bigger and harder heart" and hypertension. [Doc. No. 54 at 24-25.] And Plaintiff notes medical records in which he complained about chest pain. Thus, Plaintiff seems to imply that chest pain and dizziness are synonymous, and that medical staff should know this even though Plaintiff does not complain about dizziness. Again, this is an unqualified and unsupported opinion from a lay witness. Regardless, Dr. Chau specifically noted Plaintiffs hypertension history, medications, and chest pain complaints throughout his treatment. Dr. Chau conducted exams, ordered X-rays, ordered EKGs, and determined that the chest pain was musculoskeletal in nature. (Compl. Ex. J at 4-9.)

Additionally, the evidence shows that Dr. Chau was not alone in his opinions. There is no evidence that any medical provider recommended a lower bunk chrono for Plaintiff before August 3, 2015. On the contrary, a doctor and a nurse practitioner at another prison found that Plaintiff was medically low risk and cleared for full duty in 2014. (Compl. Ex. R at 96-97.) Finally, the evidence shows that Dr. Chau considered

7

3:17-cv-00517-CAB-KSC

Plaintiff's complaints and issues - specifically chest pain, hypertension, and dizziness - and examined, diagnosed, and treated Plaintiff accordingly. Dr. Chau ordered chest x-rays (which were normal), reviewed Plaintiff's medications, conducted physical exams, ordered and reviewed EKGs, and had follow-up visits with Plaintiff. (Compl. Ex. J. at 1-10.) And although Plaintiff mentioned dizziness in February 2015, by April 2015 he had no complaints of dizziness and was even able to exercise as usual. (Compl. Ex. J at 8-9.) And Plaintiff's own written requests for medical treatment after February 2015 do not mention dizziness. (Compl. Ex.S at 2-6.)

In short, there is no admissible evidence of deliberate indifference. Accordingly, Defendant is entitled to summary judgment.

## CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is **GRANTED**. The Clerk of Court shall enter judgment for Defendant and **CLOSE** the case.

Dated: March 16, 2020

Hon. Cathy Ann Bencivengo
United States District Judge